USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/18/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA MONROE,

Plaintiff,

- against -

THE GEO GROUP, INC., et al.,

Defendants.

**OPINION AND ORDER**

**14-CV-3130 (ER) (RLE)**

RONALD L. ELLIS, U.S.M.J.:

# I. INTRODUCTION

Plaintiff Melissa Monroe ("Monroe") commenced this action against Defendants The GEO Group, Inc., GEO Care, Inc., Bronx Community Re-Entry Center, Lachara Hill, and Katasha Arts (collectively, "Defendants") on May 2, 2014. (Doc. No. 2.) On December 2, 2015, the Honorable Edgardo Ramos referred this case to the undersigned for resolution of Defendants' Motion to Compel Discovery and Sanctions Pursuant to Rule 37(a). (Doc. No. 17.) Defendants ask that Monroe be compelled to respond to their August 12, 2015 deficiency letter, and to confirm that Monroe only had two health care providers. (Doc. No. 22-1 at 8.) They seek (1) sanctions for Monroe's difficulties in scheduling her deposition, for failure to turn over HIPAA authorization forms, and (2) attorneys' fees related to this motion. (Doc. No 22-1 at 8-9.) Monroe's counsel, Anthony Ofodile ("Ofodile") argues that sanctions are not warranted because he responded to Monroe's discovery requests, and properly objected. (Doc. No. 24 at 2.) Ofodile contends that he made a good faith error concerning the HIPAA forms when he assumed that Defendants had received both forms. (Doc. No. 27 at 3.)

For the reasons that follow, Defendants' motion for sanctions as it relates to the HIPAA authorization forms is **GRANTED.** While the Court finds that attorneys' fees are not warranted, Ofodile is **HEREBY SANCTIONED** in the amount of **$500**, payable to Defendants.

## II. BACKGROUND

On April 29, 2015, Defendants served Monroe with their first discovery requests, including a blank HIPAA authorization form, and a notice to take Monroe's deposition on July 8, 2015. (Doc. No. 22-2, Exhibit ("Ex.") B.) Pursuant to the Court's April 8, 2015 scheduling order, Monroe's responses were due by May 29, 2015. (Doc. No. 12.) Having received no responses from Monroe, Defendants sent Ofodile a follow-up letter on June 12, 2015, asking for responses by June 26, 2015. (*Id.*, Ex. C.) On June 26, 2015, Ofodile asked to respond by June 30, 2015. (*Id.*, Ex. D.) Defendants agreed, and subsequently cancelled Monroe's deposition to allow time for receipt of her discovery responses. (Doc. No. 22-1 at 3.) On July 6, 2015, Defendants sent another follow-up letter, demanding Monroe's responses, or they would seek court intervention. (Doc. No 22-2, Ex. F.) They received Monroe's responses the following day. (Doc. No. 22-1 at 3.) Monroe, however, did not include a signed HIPAA authorization form. (*Id.*)

Upon receiving Monroe's first set of discovery requests on July 21, 2015, Defendants emailed Monroe that they would not produce any witnesses for depositions until Monroe provided signed medical authorizations, and appeared for her own deposition. Defendants also attached a blank HIPAA authorization form to be completed by each of Monroe's medical providers. (*Id.* at 4.) On August 12, 2015, Defendants sent Monroe a letter detailing deficiencies in her discovery responses, including her failure to provide: (1) documentation related to her job search efforts; (2) documents relating to her income tax returns from January 2010 through the

present, and evidence of wages, earnings, payments or income received from May 2011 to the present; and (3) executed HIPAA authorization forms from Dr. Ramin Ahmadi ("Dr. Ahmadi") and St. Christopher Ottie Family Services ("St. Christopher Ottie"), health care providers Monroe identified in her discovery responses. (*Id.*) Defendants also cited Monroe's failure to identify the treating physician she intends to call as an expert witness. (*Id.*)

Defendants attempted to obtain the requested HIPAA forms until September 14, 2015, when Monroe provided a form for Dr. Ahmadi. (*Id.* at 5.) Monroe, however, did not provide a form for St. Christopher Ottie. On September 21, 2015, Ofodile advised Defendants that Monroe was unavailable for a deposition on October 6, 2015, and would only be available Mondays and Fridays because she lives out of state. (*Id.* at 6.) On September 23, 2015, Defendants asked Ofodile to consent to a sixty-day discovery extension, and asked that he respond to the August 12 deficiency letter, provide a HIPAA for St. Christopher Ottie, and confirm that Monroe did not have any other health care providers. (*Id.*)

Following Defendants' application to extend discovery so that Monroe could comply with her discovery obligations prior to her deposition, the Court entered a new scheduling order. (Doc. No. 15.) The Court also ordered Monroe to turn over the St. Christopher HIPAA form and to respond to the deficiency letter by October 8, 2015. (*Id.*) On October 20, 2015, and again on November 24, 2015, Defendants sent another letter to Ofodile requesting the HIPAA form, and asking Monroe to confirm that she only had two health care providers, and to respond to the deficiency letter. (Doc. No. 22 at 7.) On November 25, 2015, Ofodile contended that he had sent the HIPAA forms twice. (Doc. No. 22-2, Ex. S.) In his opposition to Monroe's motion to compel, Ofodile stated that the form for St. Christopher Ottie was sent on December 29, 2015, but he believed that it had previously been provided on February 3, 2015, and September 15,

2015. (Doc. No. 24.) On January 8, 2016, Defendants received a signed HIPAA form for St. Christopher Ottie. (*Id.* at 8.)

The Court held a telephone conference with the Parties on March 3, 2016. The Parties informed the Court that Monroe's deposition had taken place on February 29, 2016. Defendants, however, were not able to obtain Monroe's records from St. Christopher Ottie because it is an agency that holds records for foster children, and there were no records at the agency for Monroe. (Doc. No. 28.) During the deposition, Monroe confirmed that she had never been placed as a foster child, and provided a different address where she had received counseling. Upon conducting an internet search, Defendants identified the address as St. Vincent's Mental Health Services. As a result, Defendants argued during the conference that they still had not obtained proper medical records, and would possibly have to re-depose Monroe. They also stated that they still had not received tax return documents from Monroe, but had instead received an IRS retrieval form, which placed an undue burden on Defendants to retrieve Monroe's tax returns. Ofodile argued that Monroe did not possess tax documents because she had moved, but was looking into finding such documents. He also maintained that he believed that he had produced all discovery in September 2015. Ofodile directed his paralegal to send the authorizations for both Dr. Ahmadi and St. Christopher Ottie. He assumed that authorizations had been sent to both agencies because he was informed that HIPAA forms had been provided to Defendants. (Doc. No. 27 at 2.) He conceded, however, that he was out of the country. The Court ordered Ofodile to submit a declaration from his paralegal detailing her efforts to send the HIPAA forms.

After speaking with his paralegal, Ofodile discovered that no HIPAA form for St. Christopher Ottie had been sent prior to December 29, 2015. (Doc. No. 27 at 2.) St. Christopher

Ottie had been mistakenly identified in Monroe's July 7, 2015 responses. (*Id.*) Ofodile's paralegal confirmed that on February 3, 2015, she sent a HIPAA form from Dr. Ahmadi to Defendants. (Doc. No. 27-1 at 1.) After Defendants stated they had not received the form, the paralegal sent another one from Dr. Ahmadi on September 14, 2015. (*Id.* at 2.) According to the paralegal, a HIPAA form for St. Christopher Ottie was not executed until December 15, 2015, because Monroe refused to sign the form, saying she could not remember if she visited the agency. The form was mailed to Defendants on December 29, 2015. (*Id.* at 3.)

The Parties appeared before Judge Ramos on March 16, 2016. (Doc. No. 28 at 2.) Monroe was ordered to produce the outstanding HIPAA forms by 5:00 p.m. on March 22, 2016.

## III. DISCUSSION

Under Rule 37(a)(5)(A), a court must require the Party whose conduct necessitated a motion to compel discovery, or the attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. The court, however, must not order payment if: "the movant filed the motion before attempting in good faith to obtain . . . the discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(i)-(iii).

For failing to obey a court order, Rule 37(b)(2)(C) provides that the court must order a Party, the attorney advising the Party, or both, to pay reasonable expenses, including attorneys' fees, unless the failure was substantially justified, or other circumstances make the award unjust. While a court has "wide discretion in imposing sanctions, including severe sanctions under Rule 37(b)(2)," *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991), "[s]trong sanctions should be imposed only for serious violations of discovery orders . . . when failure to

comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Id.* at 1367.

In determining whether to impose sanctions under Rule 37 generally, courts should consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of non-compliance." *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002), *aff'd*, 93 F. App'x 328 (2d Cir. 2004).

The Court declines to sanction Ofodile in the form of attorneys' fees. His failure to respond to the deficiency letter, or to confirm Monroe's health care providers was not done in bad faith. Although discovery responses were due on May 29, 2015, according to Defendants, Ofodile produced discovery approximately one month later. He also corresponded with Defendants prior to producing his responses to request an extension of time, stating that his paralegal had missed days of work. (Doc. No. 22-2, Ex. C.) After responding to Defendants' discovery demands, Ofodile believed that the only remaining issue was the HIPAA authorization form from St. Christopher Ottie. (Doc. No. 24 at 2.) Furthermore, in responding the Defendants' requests, Ofodile only identified two health care providers. (Doc. No. 24-1.) The failure to provide a release for St. Christopher Ottie did not prejudice Defendants. Prejudice did result, however, when Monroe failed to timely identify the actual provider because a proper HIPAA release was delayed, and Defendants were required to expend time in raising the issue with the Court. At the March 3 conference, Defendants conceded that everything in the deficiency letter had been turned over except the correct authorization form and Monroe's tax documents. The

Court instructed Defendants to make an application to the Court if retrieval of her tax documents through the provided IRS form was unsuccessful.

The Court finds, however, that sanctions are warranted for Ofodile's failure to properly and timely investigate the delays in Defendants' receipt of the HIPAA forms. Given that his paralegal mailed the HIPAA form for Dr. Ahmadi on February 3, 2015, and September 15, 2015, Ofodile did not diligently investigate why Defendants had not received it. Furthermore, Ofodile did not appropriately inquire into whether the HIPAA form for St. Christopher Ottie was sent, and if the information was correct. By merely researching the address provided by Monroe in her initial responses, and calling St. Christopher Ottie, Ofodile would have discovered that no records existed for Plaintiff. He could have then called St. Vincent's Mental Health Services, the organization at the address provided by Monroe, to discover if it was the correct entity. Monroe's refusal to execute a HIPAA until December 2015, although it was clear that Defendants still sought the form, was enough reason to ensure that the correct organization had been identified, and accurate information had been provided. Such investigation would not have placed an undue burden on Ofodile or Monroe. It was not until the Court ordered his paralegal to provide a declaration that Ofodile took proper action to discover the miscommunication that had taken place between the Parties.

Turning over incomplete or inaccurate discovery resulted in multiple delays of Monroe's deposition, and unnecessarily delayed further discovery by the Parties. By not conducting the proper follow-up for the St. Christopher Ottie form, Ofodile violated two court orders to turn the requested information over by May 29, 2015, and October 8, 2015, respectively. While the Court is convinced that these failures were not the result of bad faith, Ofodile did not make appropriate inquiries in the face of Defendants' insistence that they had not received the

requested HIPAA forms. While it appears that Ofodile may have been distracted by personal matters, this does not excuse failing to check when ordered by the Court to produce the missing forms. It appears, in fact, that the matter would have been resolved months earlier if Ofodile had merely had a focused conversation with his paralegal.

## III. CONCLUSION

For the reasons set forth above, the Court **HEREBY SANCTIONS** Ofodile in the amount of $500, payable to Defendants, for his failure to accurately provide Defendants with the requested HIPAA authorization forms.

**SO ORDERED this 18th day of May 2016.**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**