UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA MONROE,

                Plaintiff,

   – against –

THE GEO GROUP, INC., GEO CARE, INC.,
BRONX COMMUNITY RE-ENTRY CENTER,
MS. LACHARA HILL, and MS. KATASHA
ARTIS,

                Defendants.

**OPINION AND ORDER**

14 Civ. 3130 (ER)

Ramos, D.J.:

      Melissa Monroe ("Plaintiff") brings this action against The Geo Group, Inc. ("The Geo Group"), Geo Care, Inc., Bronx Community Re-entry Center, Lachara Hill and Katasha Artis. Before this Court is a second motion for sanctions pursuant to Federal Rules of Civil Procedure 37(c)(1) ("Second Motion for Sanctions") by defendants The Geo Group, GEO Care, Inc., and Kasha Artis (together, the "Defendants").[1] Defendants request that this Court impose sanctions on Plaintiff and her counsel, Anthony Ofodile ("Ofodile"), by: (1) barring Plaintiff's claim of emotional distress, and (2) awarding Defendants the relevant costs and fees spent as a result of Plaintiff's failure to comply with her discovery obligations.

      For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

---

[1] Lachara Hill is no longer an employee of The Geo Group or GEO Care, Inc. and was never served with the Complaint.

## I. Background

### A. Factual and Procedural Background

Plaintiff was employed as a Resident Supervisor by The Geo Group from October 16, 2007 until May 2, 2011 at The Bronx Community Re-Entry Center. Doc. 2 at ¶ 9. This action arises out of Defendants' alleged refusal to permit Plaintiff to take a leave of absence from employment during her pregnancy, and her subsequent termination. *Id.* at ¶¶ 1, 10. Plaintiff seeks, *inter alia*, damages for emotional distress. *Id.* at ¶ v.

#### 1. Events Prior to May 18, 2016 Sanctions

On April 29, 2015, Defendants served Plaintiff with their first set of interrogatories regarding, *inter alia*, the nature of Plaintiff's alleged emotional distress and any medical treatment she may have received. Doc. 43 ("Adams Decl.") ¶ 4. They also attached a blank HIPAA authorization form to the requests, which Plaintiff had to sign before Defendants could subpoena the relevant records from the medical provider that treated her for her purported emotional distress. *Id.* at ¶ 6. What ensued was a lengthy saga of Plaintiff and Ofodile repeatedly failing to provide the executed HIPAA authorization form, despite several Court orders.

Although Plaintiff's Court-ordered deadline to respond to the discovery requests was June 1, 2015, she served her responses approximately one month later on July 6, 2015. *Id.* at ¶ 5, n. 2. In one of her responses, Plaintiff stated that she was treated in 2012 for emotional distress at St. Christopher Ottie Family Services ("St. Christopher") by "Angelina." *Id.* at ¶ 5. However, she failed to provide a signed HIPAA authorization form. *Id.* at ¶ 6. Consequently, Defendants made repeated requests for the executed form on July 21, 2015, August 12, 2015, August 26, 2015, and September 2, 2015. *Id.* at ¶¶ 8-11. On September 14, 2015, Plaintiff provided a

2

HIPAA authorization form for another of her medical providers, Dr. Ramin Ahmadi, but *not* for St. Christopher. *Id.* at ¶ 12.

Defendants then petitioned this Court regarding Plaintiff's failure to abide by her discovery obligations. On October 2, 2015, this Court entered an amended civil discovery plan and scheduling order, which, *inter alia*, gave Plaintiff until October 8, 2015 to provide Defendants with an executed HIPAA authorization form for St. Christopher. *Id.* at ¶ 15; Doc. 15. Plaintiff again failed to comply, which led this Court to hold a conference on January 5, 2016. Adams Decl. ¶¶ 17-19. However, Ofodile failed to appear. *Id.* at ¶ 19. On January 8, 2016, approximately three months after the second Court-ordered deadline, Defendants finally received from Plaintiff a signed HIPAA authorization form for St. Christopher, which was dated December 15, 2015, accompanied by a transmittal letter dated December 29, 2015, and post-marked January 5, 2016.[2] *Id.* at ¶ 20. The address listed on the form for St. Christopher was 2-4 Nevins St., Brooklyn, New York 11217. *Id.* Ex. I at 3. On January 14, 2016, Defendants filed a motion to compel discovery and for sanctions pursuant to Rule 37(a) ("First Motion for Sanctions") for, *inter alia*, the inordinate delay in providing an executed HIPAA authorization form for the medical institution at which Plaintiff allegedly received treatment for emotional distress. Doc. 21.

Even after receiving the long sought-after HIPAA authorization form, Defendants were unable to obtain the relevant medical records because it turned out that St. Christopher was *not*

---

[2] Ofodile claimed in a January 27, 2016 declaration that he had previously sent Defendants the HIPAA authorization form for St. Christopher on February 3, 2015, months before Defendants sent their initial discovery requests, and again on September 15, 2015. Doc. 24 at ¶ 16, Ex. 3, Ex. 5. These representations were false. Subsequently in a March 10, 2016 declaration, Ofodile explained that he had been mistaken, and that the executed HIPAA form for St. Christopher was sent for the first time on December 29, 2015. Doc. 27 at ¶¶ 3, 11-12. Even this statement is false. The post-marked envelope shows that the executed form was sent to Defendants on January 5, 2016. Adams Decl. ¶ 20, Ex. I at 2.

3

the institution that treated Plaintiff. In response to Defendants' subpoena, St. Christopher advised Defendants that its business is placing children in foster care, and that it had no records pertaining to Plaintiff. Adams Decl. ¶ 23, Ex. K. Furthermore, although Plaintiff testified that she was treated at St. Christopher during her deposition on February 29, 2016, she also admitted that the HIPAA authorization form might have contained the wrong address and that she was treated at "66 Boerum Place." *Id.* at ¶¶ 24-25, Ex. L at 170:8-171:5, 176:18-25. Defendants conducted an internet search of this address and discovered that it belonged to a different institution: St. Vincent's Mental Health Services ("St. Vincent's"). *Id.* at ¶ 25.

On March 3, 2016, Magistrate Judge Ellis held a teleconference regarding Defendants' First Motion for Sanctions. *Id.* at ¶ 26; *see* Doc. 26. At the teleconference, Magistrate Judge Ellis informed Ofodile that he had an obligation to confirm the information his client provided, and warned that if Ofodile was unable to clarify where Plaintiff was treated, she would be unable to present the evidence at trial. Adams Decl. ¶ 26. On March 10, 2016, Ofodile submitted a declaration claiming that Plaintiff is now firmly convinced that St. Vincent's was the correct institution given that it is at the address she went to for therapy. *Id.* at ¶ 27. He also stated that she had initially refused to sign the HIPAA authorization form because she did not recognize the address on the form. *Id.* On March 16, 2016, the parties appeared before this Court and Plaintiff was ordered to produce the HIPAA authorization form for St. Vincent's by March 22, 2016 at 5:00 p.m. *Id.* at ¶ 29. Plaintiff failed to abide by that deadline as well. *Id.* at ¶ 30. On March 29, 2016, a week after the due date and eleven months after Defendants first requested it, Plaintiff provided the signed form to Defendants. *Id.* at ¶ 31.

On April 1, 2016, Defendants issued a subpoena to St. Vincent's, which requested

4

> "[a]ny and all documents in [St Vincent's] possession, custody and/or control concerning, pertaining, referring or relating to *the diagnosis, evaluation, treatment, care and/or monitoring of Melissa Monroe's . . . physical, mental or emotional condition* by [St. Vincent's], or anyone employed or affiliated with [St. Vincent's] at any time, including, but not limited to: all medical records and/or reports; *consultation, progress, therapy or similar notes*, medications and prescriptions; MRI records and x-rays; statements made for the purpose of obtaining or maintaining benefits; statements of charges for services; products or medications rendered to Melissa Monroe; records of diagnosis and treatment; laboratory test results; and records of in-patient and out-patient care."

*Id.* Ex. O at 1, 4 (emphasis added). However, Defendants encountered further hurdles in obtaining those documents. On April 25, 2016, Defendants received a certification from St. Vincent's which stated that Plaintiff had never been treated there. *Id.* at ¶ 32, Ex. P. Defendants informed Magistrate Judge Ellis on April 28, 2016 that it appeared from St. Vincent's certification that Plaintiff was never treated for emotional distress at all. Doc. 31 at 1. On May 16, 2016, Ofodile submitted a declaration indicating that the certification was in error caused by the fact that Plaintiff's "[t]herapist . . . was out of the [o]ffice when the subpoena was received by St. Vincent's . . . and . . . was not contacted before the response to the [s]ubpoena was returned [to Defendants]." Doc. 32 at ¶ 2. He also declared that the therapist had since requested Plaintiff's records from storage, and that she will respond to the subpoena upon retrieval. *Id.* at ¶ 4.

On May 18, 2016, Magistrate Judge Ellis sanctioned Ofodile in the amount of $500 for failure to properly investigate the delays in Defendants' receipt of the HIPAA authorization form, and whether St. Christopher was the correct institution, which caused Plaintiff to be in violation of several Court orders. Doc. 33 ("First Sanctions Decision"). All of these failures could have been avoided or timely corrected if Ofodile had conducted even the most basic due diligence regarding where, if at all, Plaintiff had received mental health treatment.

5

### 2. Events After May 18, 2016 Sanctions

On June 15, 2016, this Court held a conference and directed Ofodile to update the Court regarding the status of Plaintiff's medical records by June 29, 2016. Adams Decl. ¶ 36. That deadline was also not met. On June 30, 2016, a day after the deadline, Ofodile submitted two separate status reports. In the first, received by the Court at 11:41 a.m., he indicated that St. Vincent's still had not received the records from its off-site storage facility, that he had spoken with Angelina Akhvlediani ("Akhvlediani"), a Senior Therapist at St. Vincent's who had treated Plaintiff, "many times" since the June 15, 2016 conference,[3] and that he asked Akhvlediani to provide "the actual treatment records." Doc. 34 at 1. In the second June 30, 2016 status report, received by the Court at 1:32 p.m., he stated that the records had been retrieved and faxed to Defendants. Doc. 35.

Defendants were thus able to finally examine St. Vincent's records and conduct further depositions related to those records. However, the records given to Defendants on June 30, 2016 were from the period November 2013 to September 2014, two years after her termination. Adams Decl. ¶¶ 38, 42. Moreover, the documents produced did not contain any treatment notes; Defendants were given only twelve pages of records consisting of an Admission Note, an Initial Psychiatric Evaluation and a Discharge Summary Plan. *Id.* at ¶ 38. It was not until almost one month later, on July 29, 2016, that Defendants received Plaintiff's treatment records and progress notes from St. Vincent's. *Id.* at ¶ 42. None of those documents mention Plaintiff's employment at The Geo Group. *Id.* On August 4, 2016, Defendants deposed Akhvlediani who testified, in

---

[3] Ofodile actually declared that he had been in contact with Akhvlediani many times since the "June 20, 2016" conference, but because no conference was held on June 20, 2016, the Court assumes that he was referring to June 15, 2016. Doc. 34 at 1.

apparent direct conflict with Ofodile's representations to the Court on May 16, 2016 and June 30, 2016 that:

> (1) the first time Ofodile spoke with her was June 22, 2016;
>
> (2) Ofodile never mentioned to her that Defendants had served a subpoena on St. Vincent's;
>
> (3) she did not take any vacation or leave of absence in April 2016;
>
> (4) Ofodile never advised her that she should produce actual treatment records; and
>
> (5) she informed Ofodile on June 30, 2016 that she intended to withhold progress notes.

*Id.* at ¶ 43.  Plaintiff and Ofodile dispute the above testimony[4].  Doc. 50 ("Opp. Mot. for Sanctions") at 3.  In addition, Akhvlediani testified, *inter alia*, that:

> (1) Plaintiff sought therapy in November 2013 as a result of a domestic dispute with her boyfriend and never mentioned her employment with The Geo Group; and
>
> (2) certain information, including Plaintiff's psychiatric evaluation, physical findings from her primary care doctor and medication form, had *still* been withheld from Defendants.

*Id.*  On August 15, 2016, Defendants deposed Plaintiff again.  *Id.* at ¶ 46.  At that time, Plaintiff revealed that she had Akhvlediani's cell phone number throughout the relevant time period, and that they had discussed Plaintiff's personal affairs, potentially visiting Akhvlediani at her office, and Plaintiff's medical records.  *Id.*; Doc. 54 ("Adams Reply Decl.") Ex. A at 312:16-313:16.

On August 30, 2016, Defendants filed this instant Second Motion for Sanctions, and the motion was fully briefed on October 4, 2016.  Docs. 41, 50, 55.

---

[4] Specifically, they state that Akhvlediani's testimony is "totally inaccurate," and that it is "unfathomable" that Ofodile would be calling St. Vincent's and Akhvlediani about their failure to honor a subpoena without telling them that a subpoena was served.  Opp. Mot. for Sanctions at 3.  Monroe further submits that she personally informed Akhvlediani that there was a subpoena for her records.  Doc. 52 ("Monroe Aff.") at ¶¶ 4-6.

## II. Discussion

Defendants file the instant Second Motion for Sanctions after more than fourteen months of unwarranted delays by Plaintiff and Ofodile in failing to provide *one* signed HIPAA authorization form, and disregard for several of this Court's orders. A second motion for sanctions is allowed under Rule 37 if it is brought on different grounds from the first motion. *Homkow v. Musika Records, Inc.*, No. 04 Civ. 3587 (KMW, THK), 2008 WL 508597, at *6 (S.D.N.Y. Feb. 26, 2008). Accordingly, the Court's analysis will focus on events that followed, or were discovered after May 18, 2016, the date Ofodile was first sanctioned.

The alleged misconduct that occurred or were discovered after the First Sanctions Decision issued on May 18, 2016 are as follows[5]:

- Plaintiff's failure to disclose that she possessed Akhvlediani's cell phone number throughout the entire relevant period, and had been in regular contact with her, which was revealed only in August 2016;

- The following representations by Ofodile, which are contradicted by Akhvlediani's deposition testimony: (1) that Akhvlediani was out of the office when St. Vincent's responded to the subpoena; (2) Plaintiff and Ofodile had done everything within their power to ensure that the relevant mental health records and produced, and produced promptly; and (2) that he had advised Akhvlediani to turn over the "actual treatment records;" and

- The alleged revelation that the St. Vincent's medical records had absolutely nothing to do with Plaintiff's employment at the Geo Group.

Doc. 53 ("Reply Mot. for Sanctions") at 1-2; Doc. 32 at ¶ 2; Doc. 34 at 1; Adams Decl. ¶ 43.

The Court will address each of these alleged sanctionable offenses in turn.

---

[5] Defendants also claim that Plaintiff and Ofodile should be sanctioned for having produced the HIPAA form for St. Vincent's on March 29, 2016, a week after the Court-ordered deadline of March 22, 2016. However, this delay occurred more than a month before Magistrate Judge Ellis issued the First Sanctions Decision on May 18, 2016. Since courts can consider the entire record to determine the appropriate sanction under Rule 37, *Abreu v. City of New York*, 208 F.R.D. 526, 529 (S.D.N.Y. 2002) (citing *Diapulse Corp. of Am. v. Curtis Pub. Co.,* 374 F.2d 442, 447 (2d Cir. 1967)), Magistrate Judge Ellis was aware of this delay, and could have considered it. Therefore, the week-long failure to timely produce the HIPAA form for St. Vincent's will not be considered a second time in the instant motion.

### A. Plaintiff's Failure to Comply with Discovery Requests and Court Orders

Defendants claim additional sanctions are warranted under Rule 37(c)(1) based on the new revelation that Plaintiff possessed Akhvlediani's cell phone number throughout the relevant period, and had been in regular contact with her. Reply Mot. for Sanctions at 1-2. Plaintiff asserts that her continued contact with her therapist and delay in providing the signed HIPAA authorization form for St. Vincent's should not be considered on this motion because Magistrate Judge Ellis had already addressed these issues on May 18, 2016. Opp. Mot. for Sanctions at 7. She is wrong. Of course, Magistrate Judge Ellis could not have considered this information because he was not made aware of it. It is therefore appropriate to consider it now.

Under Rule 37(c)(1), a court may sanction a party that "fails to provide information . . . as required by Rule 26(a) or (e)." Fed.R.Civ.P. 37(c)(1). Under Rule 26(e), Plaintiff must supplement or correct the disclosure in its initial disclosures, response to an interrogatory, or request for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ; or [] as ordered by the Court." Fed.R.Civ.P. 26(e)(1). Plaintiff previously conceded that she learned in or around September 2015 that her interrogatory response was incomplete or incorrect when she was asked to sign the HIPAA authorization form for St. Christopher. Doc. 27 at ¶¶ 9, 11. Ofodile declared that Plaintiff initially declined to sign the HIPAA form for St. Christopher because she had never visited the address listed on the form for any services relating to this case. *Id.* at ¶ 9. Moreover, Plaintiff's testimony during her first deposition on February 29, 2016 established that she was fully aware of the address of her medical provider, and of the fact that this address is different from the address of St. Christopher. Adams Decl. ¶¶ 24-25, Ex. L at 170:8-171:5, 176:18-25. Under Rule 26(e), she should have promptly corrected the material mistake in her interrogatory

9

response, which named St. Christopher as her medical provider, but instead, she doubled down by providing a HIPAA form for St. Christopher with an address that she knew to be wrong, and allowed Defendants to subpoena her medical records from that institution. Indeed, the identity of the correct institution, St. Vincent's, only came to light after Defendants repeatedly implored Plaintiff to comply with her discovery obligations, petitioned this Court, and separately investigated.

Courts may impose, *inter alia*, the following sanctions under Rule 37(c)(1) for violation of Rule 26(e): imposition of attorneys' fees and costs expended, preclusion of the information at trial, or dismissal of the action in whole or in part. Fed.R.Civ.P. 37(b)(2)(A)(iii)-(v), 37(c)(1)(A). "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (internal quotation marks and citation omitted). In selecting the appropriate sanction, the Court may consider the full record in the case. *Abreu*, 208 F.R.D. at 529. Defendants ask this Court to both bar Plaintiff's emotional distress damages claim in its entirety, and award Defendants the relevant costs and fees. They further assert that if the Court merely precludes Plaintiff from presenting her medical records at trial and allow Plaintiff to assert a garden variety emotional distress damages claim, Plaintiff would be benefited as she would be relieved of explaining at trial the non-existent connection between her treatment and her employment at The Geo Group. Reply Mot. for Sanctions at 5 n.2.

The relevant factors for determining whether a district court should exercise its broad discretion under Rule 37 are: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of

noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011) (citing *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). "[T]hese factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion." *S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 144 (2d Cir. 2010).

In the First Sanctions Decision, Magistrate Judge Ellis only sanctioned Ofodile in the amount of $500 for failing to adequately investigate the identity of the medical provider, and declined to sanction Plaintiff, concluding, *inter alia*, that the failures to produce a correct HIPAA form were "not the result of bad faith." First Sanctions Decision at 7-8. However, it was subsequently revealed during Plaintiff's second deposition on August 15, 2016, that she was communicating with Akhvlediani throughout the relevant period to provide personal updates, and that they even discussed Plaintiff and her children visiting Akhvlediani *at her office*. Adams Reply Decl. Ex. A at 312:16-313:16. This new testimony belies Plaintiff's representations that her failures were caused by "innocent confusion" as to the medical provider's name, "caused by the passage of time." Monroe Aff. ¶ 18. This is not a situation where extended time between the incident and disclosure caused loss of memory or confusion. Plaintiff was in contact with her medical provider throughout, and any initial confusion she may have had should have been promptly corrected when she learned that the institution name she provided was located at an address different from where she received treatment and was contemplating visiting. Her failure to do so caused more than fourteen months of delay. Furthermore, as Magistrate Judge Ellis previously found, Plaintiff's failures to timely provide the correct information and HIPAA form prejudiced the Defendants by requiring them to expend time in making repeated requests and

11

petitioning this Court. *See* First Sanctions Decision at 6.

However, the Court nonetheless finds that dismissal of the emotional distress damages claim is unwarranted at this juncture. Dismissal is "pungent, rarely used, and conclusive," and thus, is only employed where a court is "sure of the impotence of lesser sanctions." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012) (citing *Dodson v. Runyon*, 86 F.3d 37, 39 (2d Cir. 1996)). Plaintiff has since complied with her discovery obligations, albeit belatedly, and Defendants are currently in possession of the medical records. Moreover, the Court had not previously warned Plaintiff that her delays and noncompliance may result in striking of her claim. *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012) (vacating a dismissal of a claim where the plaintiff had no notice that a possible consequence for noncompliance with the court's discovery order could be striking its request for damages). The Court now hereby notifies Plaintiff and Ofodile that any further misconduct in this action may result in not only a dismissal of one claim, but the entire action.

Furthermore, in awarding relevant fees and costs, courts must consider the financial circumstances of the sanctioned party. *Mac Truong v. Hung Thi Nguyen*, No. 10 CIV. 386 DAB, 2013 WL 4505190, at *6 (S.D.N.Y. Aug. 22, 2013); *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir.1992) (citations omitted). Plaintiff avers that she would not be able to pay monetary sanctions as she is a single mother of three and is employed at a job that pays barely above minimum wage. Monroe Aff. ¶ 21. Thus, although the Court finds that she engaged in highly sanctionable conduct, it also finds that any monetary sanctions would impose an unreasonable burden on Plaintiff.

## B. Ofodile's Misrepresentations to this Court

The Court further finds that Ofodile engaged in misconduct after Magistrate Judge Ellis sanctioned him in the amount of $500 on May 18, 2016. On April 1, 2016, Defendants subpoenaed St. Vincent's for "[a]ny and all documents . . . pertaining, referring or relating to the diagnosis, evaluation, treatment, care and/or monitoring of [Plaintiff's] . . . physical mental or emotional condition by [St Vincent's or its employees]." Adams Decl. Ex. O at 4. The subpoena further enumerated the following categories of documents: "all medical records and/or reports; consultation, progress, therapy or similar notes, medications and prescriptions; . . . products or medications rendered to [Plaintiff]; records of diagnosis and treatment; laboratory test results; and records of in-patient and out-patient care." *Id.* However, the first production made on June 30, 2016 only included twelve pages consisting of an Admission Note, an Initial Psychiatric Evaluation and a Discharge Summary Plan, spanning a period from November 2013 to September 2014. *Id.* at ¶ 38. The second production on July 29, 2016 included Plaintiff's treatment records and progress notes, but it still did not include any psychiatric evaluations, physical findings from Plaintiff's primary care doctor or medication forms. *Id.* at ¶¶ 42-43. Defendants ask this Court to sanction Ofodile for this deficiency. Akhvlediani testified on August 4, 2016 that she previously advised Ofodile that St. Vincent's would not be sending "any sensitive information like progress notes." *Id.* at ¶ 43. However, Ofodile did nothing to ensure that those notes, along with other subpoenaed documents, were produced. *Id.* at ¶ 44.

In fact, on May 16, 2016 and June 30, 2016, Ofodile expressly represented to Magistrate Judge Ellis and the Court that: (1) Akhvlediani was out of the office when St. Vincent's responded to the subpoena in April 2016; (2) Plaintiff and Ofodile had done everything within their power to ensure that the relevant mental health records and produced, and produced

13

promptly; and (3) Plaintiff and Ofodile had advised Akhvlediani to turn over the "actual treatment records." Doc. 32 at ¶¶ 2, 5; Doc. 34 at 1-2. These representations are directly contradicted by Akhvlediani's testimony on August 4, 2016 in which she asserts that she never spoke to Ofodile before June 22, 2016, she did not take any vacation or leave of absence in April 2016, Ofodile never told her that St. Vincent's was subpoenaed by Defendants, Ofodile never advised her to produce actual treatment records, and she told Ofodile on June 30, 2016 that she intended to withhold progress notes. Adams Decl. ¶ 43. It is also contradicted by Plaintiff's concession that she had Akhvlediani's contact information the entire time and thus the miscommunication with St Vincent's could have been avoided.

Plaintiff and Ofodile dispute Akhvlediani's testimony. Plaintiff allegedly contacted Akhvlediani after St. Vincent's claimed not to have her medical records. Monroe Aff. ¶ 4. She asserts that she told Akhvlediani about the subpoena on St. Vincent's, and St. Vincent's claim. *Id.* at ¶¶ 5-6. Akhvlediani purportedly responded that she would request Plaintiff's records, that it would take approximately two weeks, and that she would respond to the subpoena when the records arrive. *Id.* at ¶ 6. Plaintiff and Ofodile further state that "it is unfathomable that Counsel and Plaintiff would be calling St. Vincent's Family Services, talking to the facility and the Counselor about their failure to honor a subpoena served on them and the ensuing consequences and harm coming to Plaintiff and Counsel because of that failure without telling her that a subpoena was served." Opp. Mot. for Sanctions at 3; *see* Doc. 51 ("Ofodile Decl.") ¶¶ 8-10, 12. He argues that the proper motion would be to sanction St. Vincent's for failure to honor the subpoena, not to sanction Plaintiff and/or Ofodile for that failure. Opp. Mot. for Sanctions at 3. This argument fails.

The Court does not find Ofodile's statements that seek to refute Akhvlediani's testimony

to be credible given the tortured history of the instant litigation. The Court also finds no credible reason for Akhvlediani to provide false testimony during her August 4, 2016 deposition, and Ofodile fails to show otherwise. Ofodile merely relies on the unfounded assertion that Akhvlediani gave false testimony because Defendants "threatened" her that her failure to comply with the subpoena would lead to sanctions. Ofodile Decl. at ¶ 14. He was presumably under a similar "threat" that the continued delay in the Defendants' receipt of the records from St. Vincent's may lead to a second sanction. Furthermore, Ofodile does not adequately dispute Akhvlediani's testimony that he knew her intention to withhold progress notes. Thus, Ofodile has at least misrepresented to this Court that he had done *everything* within his power to ensure prompt production of the relevant medical records. He did not. Ofodile *knew* that certain subpoenaed documents would be withheld by Akhvlediani, and did not attempt to correct this by fully clarifying St. Vincent's obligations pursuant to the subpoena, and/or by informing Defendants of Akhvlediani's intent. His conduct is even more egregious considering that his misrepresentation occurred on the heels of his May 18, 2016 sanction for gross failures that delayed Defendants from obtaining these records by more than fourteen months. The Court finds that Ofodile at best intended to deceive this Court and Defendants in order to further delay Defendants from obtaining a full production, or to cover for his failures to timely comply with Court orders, and at worst sought to obstruct Defendants from receiving the withheld production.

Although Rule 37 is inapplicable here as a party does not have the obligation to seek documents from third parties "if compulsory process against the third parties is available to the party seeking the documents," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007), a district court may *sua sponte* impose sanctions pursuant to Rule 11 or its inherent power to impose sanctions. Under Rule 11, a court may *sua sponte* impose sanctions for

15

violating Rule 11(b) by "making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. Partnership,* 542 F.3d 43, 51 (2d Cir. 2008). Separately, a court may also *sua sponte* impose sanctions pursuant to its inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," which includes "disciplin[ing] attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (citation omitted). In order to *sua sponte* impose Rule 11 sanctions or sanctions pursuant to courts' inherent power, a court must find "subjective bad faith." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). When a court invokes its inherent power, there is a narrow exception to the bad faith requirement. If the alleged misconduct was not a "conduct of the litigation" or "taken on behalf of a client," a court need not make a specific finding of bad faith in order to impose sanctions. *Int'l Cards Co., Ltd., v. Mastercard Int'l, Inc.*, No. 13 Civ. 2576 (LGS), 2017 WL 3575254, at *4 (S.D.N.Y. Aug. 17, 2017) (citing *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000)).

"[M]aking a false statement with intent to mislead [a c]ourt" certainly evinces subjective bad faith. *Macolor v. Libiran*, No. 14 Civ. 4555 (JMF), 2015 WL 1267337, at *4 (S.D.N.Y. Mar. 18, 2015); *see also Ptak Bros. Jewelry, Inc. v. Ptak,* No. 06 Civ. 13732 (DC), 2009 WL 807725, at *9-10 (S.D.N.Y. Mar. 30, 2009) (entering default judgment as a sanction for, among other things, attorney misrepresentations to the Court); *S.E.C. v. Smith,* 710 F.3d 87, 97 (2d Cir. 2013) ("Under Rule 11(c)(3) and the inherent power of the court, sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith."). In accordance with Rule 11(c)(3) and due process requirements, Ofodile is hereby directed to show cause as to why the Court should not impose sanctions on him pursuant to either Rule 11 or the Court's inherent powers.

## A. Relevance of St. Vincent's Records to Plaintiff's Emotional Distress Claim

Defendants also claim that Plaintiff should be sanctioned for her alleged misrepresentation that she received therapy concerning her employment at The Geo Group. She first made this assertion in one of her interrogatory responses, and still maintains that St. Vincent's treated her for emotional distress caused by Defendants. Monroe Aff. ¶¶ 11-16; Adams Decl. Ex. A at 12-13. Plaintiff claims that since she was the primary breadwinner, once she was terminated from her position at The Geo Group, her relationship with her boyfriend and father of her children deteriorated, which led her to seek treatment at St. Vincent's. Opp. Mot. for Sanctions at 8-9; Monroe Aff. ¶¶ 11-14. However, upon reviewing the documents from St. Vincent's, Defendants believe that her treatment was irrelevant to her employment at The Geo Group and ask this Court to impose sanctions on Plaintiff for causing Defendants to expend much time and resources in obtaining these irrelevant records. Rule 37 is inapplicable because it does not allow sanctions for providing information that the opposing party believes is irrelevant. Fed.R.Civ.P. 37(c)(1), Fed.R.Civ.P. 26(a), Fed.R.Civ.P. 26(e). Thus, the relevant inquiry is whether this Court should nevertheless further seek to *sua sponte* impose sanctions pursuant to Rule 11 or the Court's inherent powers for the alleged misrepresentation in her interrogatory response.

The record does not show that Plaintiff acted in subjective bad faith and Plaintiff maintains that she believes her termination was at the root of her emotional turmoil. Defendants' position may be that this argument fails to establish Plaintiff's emotional distress claim against Defendants, but whether Plaintiff's argument would eventually succeed is a question for a later proceeding. Misunderstanding the law or attempting to extend the law to a novel application is not an appropriate basis for sanctions. *See*

*Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) ("The issue of sanctions brings to the surface the tension between the goal of discouraging abuse of the legal system and that of encouraging refinement of the law through the assertion of novel but non-frivolous legal theories."); *Classic Tool Design, Inc. v. Castrol Indus. N. Am., Inc.*, 58 F. Supp. 2d 313, 315 (S.D.N.Y. 1999) (declining to award sanctions where the action is nearly a "misunderstanding of the law of former adjudication [rather] than as a deliberate insult to the Court."). Thus, the Court declines to sanction Plaintiff for making this assertion.

### III. CONCLUSION

For the reasons stated above, Defendants' motion for sanctions is GRANTED in part and DENIED in part. Specifically, the Court finds that Plaintiff engaged in highly sanctionable conduct in failing to abide by her discovery obligations, which would normally warrant monetary sanctions of relevant attorneys' fees and costs incurred by Defendants. However, her financial circumstances counsels against the imposition of a monetary fee. Nonetheless, the Court notifies Plaintiff that any further misconduct may lead to dismissal of the entire case. Ofodile is directed to show cause by October 2, 2017 as to why he should not be further sanctioned pursuant to either Rule 11 or the Court's inherent powers.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 41.

It is SO ORDERED.

Dated: September 6, 2017
New York, New York

Edgardo Ramos, U.S.D.J.