UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA MONROE,

       Plaintiff,

– against –

THE GEO GROUP, INC., GEO CARE, INC.,
BRONX COMMUNITY RE-ENTRY CENTER,
LACHARA HILL, and KATASHA ARTIS,

       Defendants.

**OPINION AND ORDER**

14 Civ. 3130 (ER)

Ramos, D.J.:

  Melissa Monroe ("Plaintiff") brings this action against The Geo Group, Inc. ("The Geo Group"), Geo Care, Inc., Bronx Community Re-entry Center, Lachara Hill[1] and Katasha Artis (together, the "Defendants"). By order dated September 6, 2017 ("September Order"), the Court addressed Defendants' second motion for sanctions and found, *inter alia*, that Plaintiff's counsel, Anthony Ofodile ("Ofodile"), engaged in misconduct that may warrant *sua sponte* sanctions pursuant to either Federal Rule of Civil Procedure 11 or the Court's inherent powers. Doc. 56. The Court then ordered Ofodile to show cause as to why he should not be sanctioned. *Id.* On October 2, 2017, Ofodile responded to the Court, asking the Court to not to award further sanctions. Doc. 57 ("Ofodile Decl.").

  For the following reasons, the Court finds that Ofodile failed to show cause as to why he should not be further sanctioned.

---

[1] Lachara Hill is no longer an employee of The Geo Group or GEO Care, Inc. and was never served with the Complaint.

I.     **Background**

The Court presumes familiarity with the facts and procedural history of the case, which are detailed in the September Order, and discusses here only those facts necessary to determine whether Ofodile should be further sanctioned.

On April 29, 2015, Defendants served Plaintiff with a set of interrogatories regarding, *inter alia*, the nature of Plaintiff's alleged emotional distress and any medical treatment she may have received.  Doc. 43 ("Adams Decl.") ¶ 4.  They also attached a blank HIPAA authorization form to the requests, which Plaintiff had to sign before Defendants could subpoena the relevant records from the medical provider that treated her for her purported emotional distress.  *Id.* ¶ 6.  Plaintiff failed to provide the HIPAA form, and at one point, provided an incorrect form naming an entity from which she never received any medical care.  *Id.* ¶¶ 7, 20-25.

On January 14, 2016, Defendants filed a motion to compel discovery and for sanctions pursuant to Rule 37(a) before Magistrate Judge Ellis for the inordinate delay in providing an executed HIPAA authorization form for the medical institution at which Plaintiff allegedly received treatment for emotional distress.  Doc. 21.

On March 29, 2016, after eleven months of delays, Defendants received a HIPAA authorization form for St. Vincent's Mental Health Services ("St. Vincent's").  Adams Decl. ¶¶ 25, 31.

On April 1, 2016, Defendants issued a subpoena to St. Vincent's, which requested

> "[a]ny and all documents in [St Vincent's] possession, custody and/or control concerning, pertaining, referring or relating to *the diagnosis, evaluation, treatment, care and/or monitoring of Melissa Monroe's . . . physical, mental or emotional condition* by [St. Vincent's], or anyone employed or affiliated with [St. Vincent's] at any time, including, but not limited to:  all medical records and/or reports; *consultation, progress, therapy or similar notes*, medications and prescriptions; MRI records and x-rays; statements made for the purpose of obtaining or maintaining benefits; statements of charges for services, products or medications

>rendered to Melissa Monroe; records of diagnosis and treatment; laboratory test results; and records of in-patient and out-patient care."

*Id.* Ex. O at 1, 4 (emphasis added). However, on April 25, 2016, Defendants received a certification from St. Vincent's which stated that Plaintiff had never been treated there. *Id.* at ¶ 32, Ex. P. On May 16, 2016, Ofodile submitted a declaration indicating that the certification was in error caused by the fact that Plaintiff's "[t]herapist . . . was out of the [o]ffice when the subpoena was received by St. Vincent's . . . and . . . was not contacted before the response to the [s]ubpoena was returned [to Defendants]." Doc. 32 at ¶ 2. He also declared that the therapist had since requested Plaintiff's records from storage, and that she will respond to the subpoena upon retrieval. *Id.* at ¶ 4.

On May 18, 2016, Magistrate Judge Ellis sanctioned Ofodile in the amount of $500 for failure to accurately provide Defendants with the requested HIPAA authorization form. Doc. 33.

On June 15, 2016, this Court held a conference and directed Ofodile to update the Court regarding the status of Plaintiff's medical records by June 29, 2016. Adams Decl. ¶ 36. On June 30, 2016, a day after the deadline, Ofodile submitted two separate status reports. *Id.* ¶ 37. In the first, received by the Court at 11:41 a.m., he indicated that St. Vincent's still had not received the records from its off-site storage facility, that he had spoken with Angelina Akhvlediani ("Akhvlediani"), a Senior Therapist at St. Vincent's who had treated Plaintiff, "many times" since the June 15, 2016 conference,[2] and that he asked Akhvlediani to provide "the actual treatment records." Doc. 34 at 1. In the second June 30, 2016 status report, received by the Court at 1:32 p.m., he stated that the records had been retrieved and faxed to Defendants. Doc. 35.

---

[2] Ofodile actually declared that he had been in contact with Akhvlediani many times since the "June 20, 2016" conference, but because no conference was held on June 20, 2016, the Court assumes that he was referring to June 15, 2016. Doc. 34 at 1.

3

However, the records given to Defendants on June 30, 2016 were from the period November 2013 to September 2014, two years after her termination, and did not contain any treatment notes. Adams Decl. ¶¶ 38, 42. Defendants were given only twelve pages of records consisting of an admission note, an initial psychiatric evaluation and a discharge summary plan. *Id.* at ¶ 38. It was not until almost one month later, on July 29, 2016, that Defendants received Plaintiff's treatment records and progress notes from St. Vincent's. *Id.* at ¶ 42.

On August 4, 2016, Defendants deposed Akhvlediani who testified, in apparent direct conflict with Ofodile's representations to the Court on May 16, 2016 and June 30, 2016, concerning her interactions with Plaintiff and Ofodile up to and including June 30, 2016. *Id.* ¶ 43. Akhvlediani testified that she had not taken any vacations or any leave of absence in April 2016. Adams Decl. Ex. R ("Dep. Tr.") 43:3-25. She also stated that she had a phone conversation with Plaintiff sometime between April 2016 and June 2016, during which Plaintiff stated that her lawyer wanted to have "information that she got treatment at St. Vincent's," but did not further explain the context behind this request. *Id.* 25:12-26:11. At some point prior to June 17, 2016, Plaintiff informed Akhvlediani that Ofodile would contact her, but he did not. *Id.* at 26:15-27:24. On June 17, 2016, Plaintiff gave Akhvlediani Ofodile's phone number, and asked if she could contact him. *Id.* On June 22, 2016, Akhvlediani left Ofodile a message. *Id.* at 28:8-12. He called her back that same day, and they had their first conversation. *Id.* During that conversation, Ofodile asked if Plaintiff was a patient at St. Vincent's. *Id.* at 28:16-24. However, he did not mention that St. Vincent's was served with a subpoena or what was required of St. Vincent's aside from "proof that [Plaintiff] was a patient with [St. Vincent's]." *Id.* 30:14-32:4. The second time Ahkvlediani spoke with Ofodile was on June 30, 2016, and during that conversation, he did not request any treatment records. *Id.* 34:3-5, 35:11-36:7. Ahkvlediani

4

informed him that she would send the admission note, psychiatric evaluation and discharge summary, but that she would withhold any sensitive information such as progress notes. *Id.* Ofodile apparently did not express any concern, and again failed to state that St. Vincent's was served with any subpoena. *Id.* 34:17-21, 36:6-7. Indeed, the first time Ahvlediani became aware that there was a subpoena was on July 18, 2016. *Id.* 36:8-18. Ofodile states that Akhvlediani's testimony is not totally inconsistent with his representations to the Court, and to the extent that they are contradictory, it is a byproduct of defense counsel's poor questioning. Ofodile Decl. ¶ 26.

On August 30, 2016, Defendants filed a second motion for sanctions against Plaintiff and Ofodile. Doc. 41. On September 6, 2017, the Court found that Plaintiff engaged in sanctionable conduct, but declined to impose a monetary fee due to her financial circumstance. Doc. 56. The Court further warned Planitiff that any further misconduct may lead to dismissal of the entire case, and directed Ofodile to show cause as to why he should not be further sanctioned for making misrepresentations to the Court pursuant to either Rule 11 or the Court's inherent powers. *Id.* On October 2, 2017, Ofodile responded to the Court's order to show cause, asking the Court to not to award further sanctions. Doc. 57.

**II.     Discussion**

A district court may *sua sponte* impose sanctions under Rule 11 or pursuant to its inherent powers. Under Rule 11, a court may *sua sponte* impose sanctions for violating Rule 11(b) by "making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. Partnership,* 542 F.3d 43, 51 (2d Cir. 2008). Separately, a court may also *sua sponte* impose sanctions pursuant to its inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," which includes

"disciplin[ing] attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (citations omitted). In order to *sua sponte* impose Rule 11 sanctions or sanctions pursuant to courts' inherent power, a court must find "subjective bad faith." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (citation omitted). "[M]aking a false statement with intent to mislead [a c]ourt" certainly evinces subjective bad faith. *Macolor v. Libiran*, No. 14 Civ. 4555 (JMF), 2015 WL 1267337, at *4 (S.D.N.Y. Mar. 18, 2015); *see also Ptak Bros. Jewelry, Inc. v. Ptak,* No. 06 Civ. 13732 (DC), 2009 WL 807725, at *9-10 (S.D.N.Y. Mar. 30, 2009) (entering default judgment as a sanction for, among other things, attorney misrepresentations to the Court); *S.E.C. v. Smith,* 710 F.3d 87, 97 (2d Cir. 2013) ("Under Rule 11(c)(3) and the inherent power of the court, sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith.") (citations omitted).

Ofodile represented on June 30, 2016 that: (1) Ofodile has done everything within his power to ensure that the relevant mental health records are produced and produced promptly; and that (2) Ofodile has advised Akhvlediani to turn over the "actual treatment records." Doc. 34 at 1-2. The Court previously found that these representations are directly contradicted by Akhvlediani's testimony on August 4, 2016 in which she asserts that she never spoke to Ofodile before June 22, 2016, Ofodile never told her that St. Vincent's was subpoenaed by Defendants, Ofodile never advised her to produce actual treatment records, and that she told Ofodile on June 30, 2016 that she intended to withhold progress notes. Doc. 56 at 13-15.

Ofodile states that Akhvlediani's testimony is not wholly inconsistent with his representations, and that any contradictions are due to the defense counsel's questioning that made it unclear which event was being testified to. Specifically, Ofodile contends that it was unclear whether Akhvlediani testified about a conversation "based on her texts" or their phone

6

conversation on June 30, 2016.  Ofodile Decl. ¶¶ 5-6.  However, the Court does not find any ambiguity in the deposition transcript.  Akhvlediani testified that she spoke with Ofodile for the second time on June 30, 2016, and after she "hung up with him," the records were retrieved.  Dep. Tr. 34:3-9.  Defense counsel further asked Akhvlediani what they discussed "during that second phone call" concerning the actual treatment records. *Id.* 35:11-18.  This testimony clearly refers to a June 30, 2016 phone conversation, and Ofodile admits that he only spoke to Akhvlediani himself *once* on June 30, 2016, before he sent the first June 30, 2016 status report to the Court.  Ofodile Decl. ¶¶ 6, 9.  Akhvlediani further testified that, during that June 30, 2016 phone conversation, (1) Ofodile did not request actual treatment records; (2) she informed him that only the admission note, psychiatric evaluation, and discharge summary would be provided; and (3) she informed him that progress notes would not be provided.  Dep. Tr. 35:11-36:7.  The Court fails to see which part of this testimony is unclear or ambiguous.

Ofodile also claims that when he spoke to Akhvlediani on June 30, 2016, she did not know when the records would arrive or which records would arrive, and thus, he could not have known which records she wanted to withhold when he wrote the first June 30, 2016 letter.  Ofodile Decl. ¶¶ 6, 9.  He states that any discussions about withheld records were held after June 30, 2016.  *Id.* ¶¶ 30-31.  The Court does not accept this representation.  If it is true that there was no way to know what was in the records prior to receiving them, it is unclear on what basis Ofodile was making the representation that Akhvlediani believed that the treatment records would be provided soon.

He also maintains that he specifically told Akhvlediani that St. Vincent's was subpoenaed.  Seeking to explain away Akhvlediani's contrary testimony, he suggests that perhaps Akhvlediani was confused as to which subpoena defense counsel was referring to.  He

7

states that she might have been talking about "the second subpoena served on April 18, 2016." *Id.* ¶ 23. However, the deposition transcript demonstrates that defense counsel had asked her whether she had been informed of *any* subpoena by asking whether Ofodile mentioned on either June 22, 2016 or on June 30, 2016 "that there had been a subpoena served before that time," to which Akhvlediani responded that she did not hear about any subpoena "until July 18." Dep. Tr. 30:19-23, 34:17-21. Ofodile argues there would be no other reason to talk to Akhvlediani from in June 2016, if not concerning a subpoena. Ofodile Decl. ¶ 13. However, Akhvlediani's deposition testimony shows that the conversation only revolved around information proving that Plaintiff was a patient at St. Vincent's, not about any subpoena served requesting, *inter alia*, consultation, progress, therapy or similar notes. Dep. Tr. 26:4-11, 28:18-24.[3]

Accordingly, the Court finds that Ofodile made a number of misrepresentations, intending to inform the Court that the treatment records would be forthcoming when he had no reason to believe this was true, and to unduly over represent his efforts concerning the delivery of these records. The Court finds that these misrepresentations are egregious and warrants further sanctions as they occurred on the heels of the sanction imposed by Magistrate Judge Ellis on May 18, 2016. "Where a district court concludes that a monetary award is appropriate, its broad discretion extends to determining the amount of the award." *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 15 (2d Cir. 2010) (citations omitted). As Defendants have now received the medical records from St. Vincent's, the Court determines that a modest financial sanction is appropriate. The Court sanctions Ofodile in the amount of $500 under Rule 11 and the Court's inherent powers.

---

[3] Ofodile also represented to Magistrate Judge Ellis on May 16, 2016 that Akhvlediani was out of the office when St. Vincent's responded to the subpoena in April 2016. Doc. 32 at ¶ 2. Akhvlediani testified that she did not take any vacation or leave of absence in April 2016. Dep. Tr. 43:3-25. Ofodile merely states that this is contrary to what Akhvlediani informed Plaintiff at the time. Ofodile Decl. ¶ 2.

## III.   CONCLUSION

For the reasons stated above, Ofodile has failed to show cause as to why he should not be sanctioned under Rule 11 and the Court's inherent powers.  The Court hereby sanctions Ofodile in the amount of $500, payable to Defendants.

It is SO ORDERED.

Dated:   January 25, 2018
         New York, New York

                                                          _____
                                                          Edgardo Ramos, U.S.D.J.